[Cite as *Zachary v. LaNoue*, 2024-Ohio-1027.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SARAH RAEANN ZACHARY, | : | APPEAL NO. C-230408 |
| | | TRIAL NO. DR-2000933 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JOSEPH JAY LANOUE, | : | |
| Defendant-Appellee. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Vacated

Date of Judgment Entry on Appeal: March 20, 2024

*Godbey Law, LLC,* and *Edwin L. Vardiman, Jr.*, for Plaintiff-Appellant,

*Panico Law Group, LLC*, and *Paul R. Panico*, for Defendant-Appellee.

**KINSLEY, Judge.**

**{¶1}** Plaintiff-appellant Sarah Zachary ("Mother") appeals the decision of the Hamilton County Court of Common Pleas, Domestic Relations Division, granting defendant-appellee Joseph LaNoue ("Father") legal custody of their minor child, M.E.L. ("Child"), and designating Father as Child's residential parent. Because we hold that the trial court lacked subject-matter jurisdiction over this action, we vacate the decision of the lower court.

### *Factual and Procedural Background*

**{¶2}** Mother and Father were married in March 2017 in Wichita Falls, Texas, and divorced in Wichita County, Texas, in September 2019. On September 17, 2019, the 89th District Court of Wichita County, Texas, issued an agreed final decree of divorce in which both Mother and Father were appointed "joint conservatorship" of Child.

**{¶3}** In July 2020, Mother filed a petition for registration of the Texas parenting order in Hamilton County, Ohio. Mother asserted that she and Child had been residents of Hamilton County for the preceding six months and that Father was residing in Hebron, Kentucky. On July 2, 2020, a notice of registration of the foreign Texas order was filed in the Hamilton County Domestic Relations Court.

**{¶4}** On July 22, 2020, Father filed a motion for contempt of visitation against Mother. On August 4, 2020, Mother filed a motion to terminate the joint conservatorship and to designate her legal custodian of Child.

**{¶5}** In April 2021, the magistrate entered an order granting Father supervised visitation with Child. In September 2021, Mother filed a motion to appoint a new guardian ad litem ("GAL") for Child, alleging the assigned GAL was biased and

unfair. In the same month, Mother filed a motion to set aside the order of the magistrate granting Father supervised visitation. On October 29, 2021, the trial court denied Mother's motion.

{¶6} On November 15, 2021, the trial court issued a decision denying Mother's motion to appoint a new GAL, adopting the GAL's recommendation that Father should have interim parenting time, and noting the withdrawal of the pending contempt motion.

{¶7} On May 18, 2022, Father filed a motion for ex parte emergency custody, alleging that he had not seen Child since March 7, 2022, and was unsure of her whereabouts.

{¶8} On July 12, 2022, the trial court issued an order titled, "Judge's Order of Dismissal Due to Lack of Jurisdiction." In the order, the trial court noted that, at a hearing held on July 7, 2022, Mother orally moved to dismiss the case for lack of jurisdiction because all the parties had moved back to Texas. The trial court found that it lacked jurisdiction over the parents and Child and that Texas was "a more convenient forum due to the child's current location and the children services located and involved in Texas."

{¶9} On November 9, 2022, Father filed a motion for modification of parental rights and responsibilities. The motion sought to modify the initial custody determination made by the Texas court. In the motion, Father alleged that Child had been residing in Hamilton County with her maternal grandmother on and off since July 12, 2022.

{¶10} On December 14, 2022, the trial court re-appointed the GAL. On February 2, 2023, the GAL filed a motion for temporary interim parenting time on

3

behalf of Father. On February 13, 2022, Mother filed a proposed interim parenting schedule.

{¶11} On July 17, 2023, a hearing was held on Father's motion to modify parental rights and responsibilities. Seven witnesses testified at the hearing, including Mother, Father, and Mother's husband, Austin McCoy.

{¶12} Mother testified that concerns of physical and sexual abuse led her to withhold Child from Father from March to December 2022. Mother acknowledged her agreement with Father to relocate to Texas. Mother also testified that she married McCoy in September 2022. According to Mother, she and McCoy moved to Ohio in October 2022 and into their current home in Harrison, Ohio, in December 2022. Mother testified that, during the termination of a prior relationship in Texas, she sent her children to Ohio to stay with her mother, but she was not specific about when this took place.

{¶13} Father testified that he sought custody of Child because Mother denied his parenting time and that he moved to Kentucky to be closer to Child. He explained that when he and Mother jointly agreed to move back to Texas, he was attending school and working on buying a home in Kentucky. He indicated that he ended those plans to move to Texas per his agreement with Mother. According to Father, he relocated to Texas in February 2022 with Child. He testified that Mother did not arrive in Texas until March 2022 and that she lived three hours away from him.

{¶14} McCoy testified that he met Mother in June 2022, while she was living in Texas. He testified that the two married in September 2022, while still in Texas. He explained that, at some point, the children did go with their grandmother to Ohio, but he did not state when this occurred.

4

{¶15} On July 26, 2023, the trial court entered a decision resolving Father's motion to reallocate parental rights and responsibilities. It named Father as Child's sole legal custodian and residential parent and awarded parenting time to Mother, which Mother was required to exercise in Texas.

{¶16} Mother timely appealed.

## *Analysis*

{¶17} Mother raises three assignments of error on appeal. First, Mother argues that the trial court erred by not granting her legal custody. Second, Mother argues that the trial court erred by not granting shared parenting. Third, Mother argues that the trial court erred in restricting Mother's parenting time.

{¶18} Prior to addressing Mother's assignments of error, we consider whether the trial court had jurisdiction over this matter. "A reviewing court may consider a challenge to the court's subject-matter jurisdiction for the first time on appeal, * * * either at the parties' suggestion or sua sponte." (Internal citations omitted.) *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 27; *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 10 ("[s]ubject-matter jurisdiction cannot be waived and is properly raised" sua sponte on appeal) (citation omitted.) We review the question of jurisdiction de novo. *See In re M.R.F.-C.*, 2020-Ohio-4400, 158 N.E.3d 688 (2d Dist.).

{¶19} Jurisdiction over child-custody actions is governed by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which is codified in R.C. Chapter 3127. The UCCJEA gives jurisdictional priority and exclusive continuing jurisdiction to the courts of a child's "home state." *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, ¶ 21. A "home state" is a state in which the child

lives with a parent for at least six consecutive months immediately preceding the commencement of a child-custody proceeding. *Id.* at ¶ 31, citing R.C. 3127.01(B)(7).

**{¶20}** The UCCJEA outlines limited circumstances under which an Ohio court may assume jurisdiction over a custody determination issued by a court of another state. In this regard, R.C. 3127.17 provides:

> Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state may not modify a child custody determination made by a court of another state unless the court of this state has jurisdiction to make an initial determination under division (A)(1) or (2) of section 3127.15 of the Revised Code and one of the following applies:
>
> > (A) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under section 3127.16 of the Revised Code or a similar statute of the other state or that a court of this state would be a more convenient forum under section 3127.21 of the Revised Code or a similar statute of the other state.
> >
> > (B) The court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

**{¶21}** Thus, the authority of an Ohio court to modify a foreign custody order turns in part on whether R.C. 3127.15(A)(1) or (2) is satisfied. That statute provides as follows:

(A) Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

(2) A court of another state does not have jurisdiction under division (A)(1) of this section or a court of the home state of the child has declined to exercise jurisdiction on the basis that this state is the more appropriate forum under section 3127.21 or 3127.22 of the Revised Code, or a similar statute of the other state, and both of the following are the case:

(a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

{¶22} By its terms, the trial court's order modified the September 17, 2019 Texas order because it terminated the joint conservatorship over Child and instead named Father as the legal custodian and residential parent of Child. To have

jurisdiction to make such a modification, the requirements of R.C. 3127.17 must have been satisfied. In this case, they were not.

**{¶23}** To acquire modification jurisdiction under R.C. 3127.17, one of the scenarios set forth in R.C. 3127.15(A)(1) or (A)(2) must be present. R.C. 3127.15(A)(1) is based upon the residency of the child and the parents at the time the action is commenced. For this provision to apply, Ohio must either be the home state on the date the action is commenced, or Ohio had to have been the home state within six months before the action was commenced and the child is now absent from the state but a parent remains.

**{¶24}** Critically, we treat the filing of Father's motion to modify the Texas parenting order as the relevant commencement date for the purpose of assessing the residency requirements under this provision. We reach this holding because the trial court dismissed Mother's initial registration of the Texas order and all other pending proceedings in its July 12, 2022 "Judge's Order of Dismissal Due to Lack of Jurisdiction." Thus, because Mother's first Ohio action had been dismissed, Father's motion seeking to modify the Texas order commenced a new action that requires a new determination of jurisdiction. *See C.H. v. O'Malley*, 158 Ohio St.3d 107, 2019-Ohio-4382, 140 N.E.3d 589, ¶ 18-22.

**{¶25}** The circumstances set forth in R.C. 3127.15(A)(1) are not present with respect to Father's modification motion. As previously explained, under the UCCJEA, a state does not become the child's "home state" until the child lives with a parent or a person acting as a parent for six consecutive months immediately preceding the commencement of a child-custody proceeding. *See* R.C. 3127.01(B)(7). The motion was filed on November 9, 2022. At that time, Ohio was not Child's home state, as there

was insufficient evidence in the record to support a finding that Child resided continuously in Ohio as of May 9, 2022, six months prior to Father's filing. While the testimony at trial was somewhat ambiguous as to Child's specific whereabouts, the evidence was clear that Mother and Father had reached an agreement to relocate to Texas and that both parties did so. Father and Child moved in February 2022, and Mother moved in March 2022. Both Mother and McCoy testified that Child returned to Ohio to live with the maternal grandmother at some point, but no witness indicated exactly when this move took place. Father's motion indicated that Child was residing with maternal grandmother in Ohio, but only as of July 2022, which was not early enough to establish that Child resided continuously in Ohio for six months before Father commenced this action. Thus, in the absence of evidence that Ohio became the home state of Child as of May 9, 2022, the trial court lacked jurisdiction to modify the Texas order under R.C. 3127.15(A)(1).

{¶26} Similarly, R.C. 3127.15(A)(2) is inapplicable to Father's modification motion. This section of the statute envisions Ohio jurisdiction in two scenarios: (1) where another state lacks home-state jurisdiction, typically where the parties are residents of a country other than the United States, *see, e.g., V.K. v. K.K.*, 2022-Ohio-1661, 190 N.E.3d 96 (8th Dist.); and (2) where the home state has declined jurisdiction.

{¶27} The first scenario does not apply here, as there was no evidence in the record that another state lacked home-state jurisdiction. In fact, in its July 12, 2022 decision, the trial court found that Texas retained the ability to consider the parties' custody dispute and that Texas was the most convenient forum to do so, given the state's connection to Child and the services being provided there. Thus, there is no

evidence that Child lacked a home state in the United States, thus justifying Ohio's assertion of home-state jurisdiction.

**{¶28}** Father asserts that the second scenario does exist on the basis that the Texas court declined to exercise jurisdiction over his modification motion. However, there is no evidence in the record to support Father's assertion.

**{¶29}** In supplemental briefing on the question of jurisdiction, Father submitted "Exhibit A," which he alleged to be a docket sheet demonstrating that the Texas court declined to exercise jurisdiction over this case. Two entries on the docket sheet reflect that, on November 4, 2022, the Texas court entered a "notice of nonsuit" and an "order of nonsuit." The docket sheet further indicates that the case was simply "disposed" with no further explanation. Neither party has submitted any additional court orders or documents explaining the outcome of the Texas proceeding. Most notably, Father has not submitted the "notice of nonsuit" or "order of nonsuit" referenced in the docket sheet for us to review.

**{¶30}** We note that the Texas rule on nonsuits describes them as voluntary dismissals taken by a party, rather than a jurisdictional finding made by a court. *See* Tex.R.Civ.P. 162 ("At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, *the plaintiff may dismiss a case, or take a non-suit*, which shall be entered in the minutes."). (Emphasis added.) Interpreted literally, this rule suggests that Father voluntarily dismissed his case in Texas, not that the Texas court made a finding that it lacked jurisdiction over the dispute. Nonetheless, in the absence of the actual order entered in the case, we simply cannot discern from Father's submission the basis for the Texas court's nonsuit order or why the case was disposed.

And, importantly, a mere dismissal of a case in another state will not trigger Ohio's modification jurisdiction under R.C. 3127.15(A)(2). The home state must have specifically declined to exercise home-state jurisdiction for the provision to apply, and we cannot say whether that occurred here.

{¶31} The record before us therefore contains no evidence upon which we can conclude that the trial court had subject-matter jurisdiction to modify the Texas order under R.C. 3127.17. No evidence before the trial court established that Ohio became Child's home state six months before Father's November 2022 filing as defined by R.C. 3127.01(B)(7) and required by R.C. 3127.15(A)(1), and no evidence established that Texas relinquished home-state jurisdiction as required by R.C. 3127.15(A)(2).

{¶32} Because the trial court lacked subject-matter jurisdiction to modify the Texas order, the order issued by the trial court is void. *See Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992. We accordingly vacate the trial court's order.

{¶33} Because we have vacated the trial court's judgment for lack of jurisdiction, Mother's assignments of error are moot.

Judgment vacated.

**BOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.