[Cite as *State v. Bennett*, 2023-Ohio-4412.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                     No. 112182

    v.                                      :

MICHAEL BENNETT,                        :

    Defendant-Appellant.        :

_____

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 7, 2023

_____

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-671678-B

_____

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Yasmine M. Hasan, *for appellee*.

Timothy Young, Ohio Public Defender, and Timothy B. Hackett, Assistant Public Defender, *for appellant*.

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Michael Bennett, appeals from his convictions and sentence imposed after a bindover from juvenile court. Finding no merit to the appeal, we affirm.

## I.   Background

{¶ 2}   Following bindover from juvenile court, Bennett was indicted by information on 55 counts.  The charges arose from a crime spree that occurred between April 24, 2021, and May 16, 2021, when Bennett, who was 16 years old, and three other juvenile males approached the victims, pointed guns at them, and then stole their vehicles and other possessions from them.

{¶ 3}   After a plea agreement with the state, Bennett pleaded guilty to one count of attempted murder, eight counts of aggravated robbery, and one count of felonious assault, each with attendant firearm specifications, and two counts of receiving stolen property.  As part of the plea agreement, Bennett agreed to a sentencing range of 18 to 22 years' incarceration.  Under the agreement, Bennett also pleaded guilty to six one-year firearm specifications and three three-year firearm specifications, which the trial court indicated would be run consecutively as required by law because they involved separate acts.  The trial court advised Bennett at the plea hearing that accordingly, pursuant to his plea, his sentence would include a minimum of 15 years' incarceration on the firearm specifications before he began serving any sentence on the felonies, and thus, the "absolute bare minimum" sentence he could get would be 18 years.  Bennett indicated that he understood and the trial court accepted his guilty pleas.  The court referred Bennett for a presentence-investigation report and continued the matter for sentencing.

{¶ 4} At the sentencing hearing, the prosecutor set forth a description of the events involved in the crime spree and asked for a sentence at the higher end of the 18 to 22 year agreed sentence. Bennett's attorney then advised the court as follows:

> Yes, Your Honor. I would like to first off state that Mr. Bennett is here today in court obviously taking responsibility for the actions that occurred on the different events in question. There were six total events. Mr. Bennett is taking responsibility. He has shown remorse to me and to his family. I've spoken with his mother and grandmother. And he is a juvenile. He has no prior criminal record other than these incidents that have occurred as far as being in the juvenile system up to this point. He has been bound over here into adult court on the charges that are listed in the PSI as the juvenile charges are the ones that have been bound over here.
>
> He has been diagnosed with depression and PTSD and attention deficit disorder through the mental health services provided at juvenile court. He has not been currently receiving any treatment for any of those items.
>
> He doesn't have any work history to speak of. He's a high school student. He completed tenth grade. He has expressed a desire to continue his education in the institution.
>
> I do know that the state has agreed upon a recommended sentencing range of 18 to 22 years for Mr. Bennett. Mr. Bennett respectfully requests that the court take into account his age and his lack of criminal record and his remorse and his taking responsibility for this — for these events in question and determine that Mr. Bennett would be a candidate for this court to consider the low range of that sentencing range so that Mr. Bennett can try and put his life back together, while he's in the institution, try to improve himself and come out to be a productive member of society when he has served his time to the state of Ohio, Your Honor. Thank you.

(Tr. 78-80.)

{¶ 5} Bennett's mother and grandmother then addressed the court. Both women expressed their dismay at the minimum sentence of 18 years, asserting that Bennett and his codefendant were juveniles who had made horrible mistakes but

should have an opportunity to be rehabilitated. Bennett's grandmother said that Bennett and his codefendant had not yet "even begun their lives" and asked how putting them in prison for 18 years would help them be rehabilitated. (Tr. 83.) Bennett's mother concurred, stating that Bennett and his codefendant were juveniles "who barely understand what is going on in this courtroom" and that the court should not "just throw them away for 18 years" without a chance for rehabilitation. (Tr. 87-88.)

{¶ 6} Counsel for Bennett's codefendant then addressed the court and asked for an 18-year sentence. Counsel referenced R.C. 2929.19(B)(1)(b), which requires a court before imposing a sentence on a juvenile who was under 18 years of age when he committed the felony to which he pleaded guilty to consider youth and its characteristics as mitigating factors, including:

(i) The chronological age of the offender at the time of the offense and that age's hallmark features, including intellectual capacity, immaturity, impetuosity, and a failure to appreciate risks and consequences;

(ii) The family and home environment of the offender at the time of the offense, the offender's inability to control the offender's surroundings, a history of trauma regarding the offender, and the offender's school and special education history;

(iii) The circumstances of the offense, including the extent of the offender's participation in the conduct and the way familial and peer pressures may have impacted the offender's conduct;

(iv) Whether the offender might have been charged and convicted of a lesser offense if not for the incompetencies associated with youth, such as the offender's inability to deal with police officers and prosecutors during the offender's interrogation or possible plea agreement or the offender's inability to assist the offender's own attorney;

(v)    Examples of the offender's rehabilitation, including any subsequent growth or increase in maturity during confinement.

In his argument for an 18-year sentence, counsel for Bennett's codefendant addressed these statutory factors and gave detailed mitigation arguments regarding their applicability to the codefendant. (Tr. 89-96.)

{¶ 7}    The trial court then imposed an aggregate, indefinite term of 20 to 22.5 years' incarceration on Bennett and his codefendant, with 15 years' mandatory time on the firearm specifications. This appeal followed.

## II. Law and Argument

### A. R.C. 2929.11(B)(1)(b) Mitigating Sentencing Factors

{¶ 8}    In his first assignment of error, Bennett contends that he was denied his constitutional right to effective assistance of counsel.

{¶ 9}    The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has recognized that "the right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 10}  To establish ineffective assistance of counsel, Bennett must demonstrate that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced him so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland* at 687. The failure to prove either prong of this two-part test makes it unnecessary for a

court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52 (2000), citing *Strickland* at 697. In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Id*. at 689.

{¶ 11} Bennett contends that his trial counsel was ineffective because, unlike counsel for his codefendant, his counsel did not address nor ask the court to consider the factors set forth in R.C. 2929.19(B) regarding his youth and its attendant characteristics as mitigating factors in sentencing. He contends that the record contains no mention from either his counsel or the court of his specific intellectual capacity and failure to appreciate risks, his family or home environment, any trauma he may have suffered and the psychological impacts thereof, the extent of his participation in the conduct and the effects of peer pressure, or his general capacity for growth, maturation, and rehabilitation, the factors set forth in R.C. 2929.19(B)(1)(b)(i)–(v). Bennett asserts that instead of addressing the mitigating statutory factors, counsel "fleetingly and without context" summarily noted his age, grade, mental health diagnoses and lack of criminal record, and asked the court to consider the low end of the agreed sentencing range. He contends that because his counsel failed to address and argue the mitigating aspects of his youth relative to his sentence, his mother and grandmother were forced to ask the court to impose a lesser sentence due to his youth, even though it was incumbent upon his attorney to do so. Accordingly, he contends that because counsel failed to present any

investigation or argument concerning the specific mitigating effects of his youth as set forth in R.C. 2929.11(B)(1)(b), counsel's performance was objectively unreasonable and deficient.

{¶ 12} We agree that it would have been better had counsel addressed the R.C. 2929.11(B)(1)(b) factors in his argument to the court prior to sentencing. Nevertheless, we do not find ineffective assistance of counsel. First, R.C. 2929.11(B)(1)(b) does not impose a burden on counsel to argue the mitigating factors to the trial court at sentencing. Rather, it imposes a burden on the trial court to consider the identified factors before sentencing a defendant if the felony offense of which the defendant was convicted or pleaded guilty to was committed before the defendant was 18 years of age. And although there is a mandatory duty to consider the R.C. 2929.11(B)(1)(b) factors prior to sentencing, there is no requirement that the trial court explain its analysis of those factors in a given case. Absent any evidence to the contrary, the record adequately demonstrates that the trial court considered the R.C. 2929.11(B)(1)(b) factors before sentencing Bennett. The PSI prepared for the trial court summarized Bennett's upbringing, mental health diagnoses, substance abuse history, social activities, peer associations, and criminal attitudes and behavioral patterns. And the sentencing entry states that "the court considered all required factors of the law," which is sufficient to fulfill the trial court's obligations under the sentencing statutes. *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 27.

{¶ 13} Furthermore, the record reflects that Bennett's counsel argued that the trial court should impose a sentence at the low end of the agreed 18 to 22 year sentencing range in light of Bennett's age, lack of criminal record, mental health diagnoses, and his taking responsibility and remorse for his actions. Because counsel's sentencing argument referenced Bennett's youth and experiences, we do not find ineffective assistance of counsel, even though counsel did not specifically mention the R.C. 2929.11(B)(1)(b) factors and their applicability to Bennett at sentencing.

{¶ 14} Moreover, even if we were to find that counsel's failure to argue the R.C. 2929.11(B)(1)(b) factors was objectively unreasonable, Bennett cannot demonstrate that he was prejudiced by counsel's deficient performance, the second prong of the test for ineffective assistance of counsel. Under the plea agreement, Bennett agreed that the court could impose a sentence of 18 to 22 years' incarceration, and the court imposed an indefinite sentence of 20 to 22.5 years' incarceration, within the range of the agreed sentence. Accordingly, Bennett cannot show that he was prejudiced by counsel's performance.

{¶ 15} The first assignment of error is overruled.

**B. Consecutive Sentences on Firearm Specifications**

{¶ 16} In his second assignment of error, Bennett contends that he was denied his right to effective assistance of counsel because counsel did not correct the trial court's "misunderstanding" that it was required to run the sentences on the firearm specifications consecutively. Bennett argues that under R.C.

2929.14(B)(1)(g), the first two firearm specifications must be run consecutively, but any remaining specifications may be served consecutively in the court's discretion if the court makes the necessary findings set forth in R.C. 2929.14(C)(4) for imposing consecutive sentences. Thus, he contends that the law does not require that all firearm specifications, even if they involve separate transactions, be run consecutively and because Bennett's counsel failed to raise this issue with the trial court, his performance was ineffective. We disagree.

{¶ 17} This court analyzed this very issue in *State v. Adkins*, 8th Dist. Cuyahoga Nos. 109184 and 109185, 2021-Ohio-1294, wherein the state argued that the trial court erred because it did not impose consecutive prison terms for all firearm specifications attendant to felony convictions that were committed as separate acts. *Id.* at ¶ 16.

{¶ 18} The *Adkins* Court first found that R.C. 2929.14(B)(1)(a) provides that "if an offender * * * is convicted of or pleads guilty to" a firearm specification, the court "shall" impose a one-year, three-year, six-year, or nine-year prison term on the specification, depending on the specification. *Id.* at ¶ 13. It further found that R.C. 2929.14(C)(1)(a) provides that when a trial court imposes a prison term on a firearm specification, the court must run the prison term consecutive to all other prison terms. *Id.* R.C. 2929.14(C)(1)(a) states, in relevant part:

> [I]f a mandatory prison term is imposed upon an offender pursuant to division (B)(1)(a) of this section for having a firearm on or about the offender's person or under the offender's control while committing a felony, * * * the offender shall serve any mandatory prison term imposed * * * consecutively to any other mandatory prison term

imposed [for a firearm specification] * * * consecutively to and prior to any prison term imposed for the underlying felony * * * and consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender.

{¶ 19} The *Adkins* Court noted that R.C. 2929.14(B)(1)(b) provides an exception to the consecutive service of firearm specifications as mandated by R.C. 2929.14(C)(1)(a), and states in relevant part: "Except as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same transaction."

{¶ 20} The *Adkins* Court found that under R.C. 2929.14(B)(1)(g), if an offender is convicted of two or more felonies, at least one of the felonies is aggravated robbery or attempted murder, and the offender is convicted of two or more firearm specifications, then the sentencing court must impose prison terms for the two most serious specifications but the court has discretion to choose whether to impose prison terms on any other specifications. *Adkins*, 8th Dist. Cuyahoga Nos. 109184 and 109185, 2021-Ohio-1294, at ¶ 14. R.C. 2929.14(B)(1)(g) states:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶ 21} The *Adkins* Court found that R.C. 2929.14(B)(1)(g) does not apply, however, where the offenses and attendant firearm specifications were not part of the same act or transaction. It explained:

> As previously stated, R.C. 2929.14(C)(1)(a) generally requires consecutive service of all firearm specifications. R.C. 2929.14(B)(1)(b) provides an exception to the consecutive service of firearm specifications mandated by R.C. 2929.14(C)(1)(a), if they were committed as part of the same act or transaction. However, R.C. 2929.14(B)(1)(b) provides an exception to the exception "as provided in R.C. 2929.14(B)(1)(g)." Thus, R.C. 2929.14(B)(1)(g), which requires consecutive prison terms on the two most serious specifications in certain specified situations, only applies if the underlying felonies and attendant firearm specifications were committed as part of the same act or transaction. *See, e.g., State v. Burton*, 8th Dist. Cuyahoga No. 105470, 2018-Ohio-95 (court must impose consecutive prison terms on firearm specifications that were not committed as part of the same act or transaction). *If the felonies and attendant firearm specifications were committed separately, then the trial court must follow the default rule set forth in R.C. 2929.14(C)(1)(a), which requires mandatory consecutive service of all firearm specifications.*

(Emphasis added). *Id.* at ¶ 23. In light of its analysis, the *Adkins* Court held that the trial court erred when it did not impose consecutive prison terms on all firearm specifications attendant to felonies that involved separate acts or transactions. *Id.* at ¶ 18, 24.

{¶ 22} As acknowledged by the prosecutor and defense counsel at the plea hearing and sentencing, Bennett's offenses and attendant firearm violations occurred at separate times and locations and to different victims, and thus were separate acts. (Tr. 30, 78.) Therefore, as explained in *Adkins*, because the offenses and firearm specifications were committed separately, the trial court was required to impose consecutive service on all the firearm specifications. *See also State v.*

*Gooden*, 8th Dist. Cuyahoga No. 109643, 2021-Ohio-1192, ¶ 19 ("[R.C. 2929.14(B)(1)(g)] applies only to felonies and specifications that are part of the same act or transaction."). Accordingly, Bennett's counsel was not ineffective for failing to object to the imposition of consecutive sentences on the firearm specifications. The second assignment is overruled.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herin taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MARY J. BOYLE, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., CONCURRING:

{¶ 24} I concur with the majority but write separately to offer clarification of the slightly different lens with which appellate courts must review sentencing appeals involving constitutional claims. As the parties acknowledge, Bennett's

guilty plea included an agreement to recommend an 18- to 22-year minimum term of imprisonment. That recommendation included Bennett's agreement to plead to an aggregate term of 15 years for separate firearm specifications. The trial court accepted the recommendation and imposed an aggregate 20-year minimum term of imprisonment.

{¶ 25} A defendant's right to appeal a sentence is derived from R.C. 2953.08. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 10. R.C. 2953.08(D)(1) is "a statutory limit on a court of appeals' jurisdiction to hear an appeal." *State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 22; *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 9, fn. 1. "R.C. 2953.08 specifically and comprehensively defines the parameters and standards — including the standard of review — for felony-sentencing appeals. [Courts] need look no further" because R.C. 2953.08 "limits appellate review" of final sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 ¶ 21. A "sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." R.C. 2953.08(D)(1). "That appellant agreed to a sentencing range or sentencing cap, as opposed to a specific sentence, is immaterial." *State v. Grant*, 2018-Ohio-1759, 111 N.E.3d 791, ¶ 23 (8th Dist.). Generally speaking, the length of Bennett's sentence is unreviewable. *State v. Curry*, 8th Dist. Cuyahoga No. 111948, 2023-Ohio-1571, ¶ 16; *State v. Holman*, 8th Dist. Cuyahoga No. 111735, 2023-Ohio-716, ¶ 10.

{¶ 26} Bennett's ineffective-assistance-of-counsel argument is based on his claim that the trial court failed to consider his youth before imposing an aggregate sentence within the recommended range. When "a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence." *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 25-26. No sentence within the recommended sentencing range need be justified, and at one time, the sentence was considered unreviewable under R.C. 2953.08(D)(1). R.C. 2953.08 no longer exclusively controls appellate sentencing review.

{¶ 27} In *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, ¶ 22, a majority of the Ohio Supreme Court concluded that "R.C. 2953.08(D)(3) does not preclude an appeal of a sentence for aggravated murder or murder that is based on constitutional grounds." Subdivision (D)(3), like (D)(1), renders certain sentences unreviewable. The difference between subdivision (D)(3), which provides that a sentence for aggravated murder or murder is not reviewable, and subdivision (D)(1), which provides that a jointly recommended sentence that is imposed by the trial court is not reviewable, is that under the latter provision, the defendant arguably waives any and all constitutional challenges against the sentence by agreeing to recommend the sentence to the trial court. But *Patrick* presents a broader implication for R.C. 2953.08(D) in general.

{¶ 28} According to *Patrick*, "R.C. 2953.08(A)(4) does not describe an appeal taken on constitutional grounds and that [constitutional-right based] appeal

is not an appeal 'under this section[.]'" *Id.* at ¶ 22. R.C. 2953.08(D), is therefore, not a jurisdictional bar against an appellate challenge to the constitutional validity of a sentence. R.C. 2953.08(A) only controls a defendant's ability to challenge his sentence as being contrary to law, and claims that a sentence is "contrary to law" do not include constitutional challenges. *Id.* Although *Patrick* involved subdivision (D)(3) of R.C. 2953.08, all of division (D) is impacted since no constitutional challenge to a sentence falls under R.C. 2953.08(A). As a direct result, a constitutional challenge to a sentence can be maintained despite the relevant prohibition against appellate review in R.C. 2953.08(D).

{¶ 29} Bennett's ineffective-assistance-of-counsel claim is derived from his constitutional right to counsel. Under a plain reading of *Patrick*, that constitutional claim is reviewable in the direct appeal, despite the fact that he essentially is challenging the length of his sentence based on an argument that the trial court failed to consider Bennett's youth. Panels have rejected this type of review when not grounded on a constitutional claim. *State v. Holman*, 8th Dist. Cuyahoga No. 111735, 2023-Ohio-716, ¶ 8-9. In *Holman* at ¶ 8-9, for example, the defendant claimed that the trial court erred by sentencing him to an aggregate, indefinite term of 20 to 25.5 years without consideration of his youth pursuant to the combination of R.C. 2929.19 and *Patrick*. That claim was rejected because the defendant failed to demonstrate that his sentence was not authorized by law. *Id.* at ¶ 10. The difference between *Holman* and this case is the constitutional-right based claim Bennett advances. When the argument is devoid of any constitutional question,

such as *Holman* in which the claim was solely based on consideration of sentencing factors without regard to counsel's efficacy, it is not reviewable under the unambiguous language of R.C. 2953.08(D)(1). *Holman* at ¶ 8-9.

{¶ 30} When an appeal of a sentence is presented as a constitutional claim, however, that appeal of the sentence does not arise under R.C. 2953.08(A), and therefore, the appellate court has authority to review the sentence despite the preclusionary language under the statute. Bennett's claim is wholly derived from his belief that his trial counsel should have presented his youth as a mitigating factor for the purposes of the trial court imposing an aggregate term of imprisonment at the lowest end of the sentencing range. Before *Patrick,* that argument challenging the length of a sentence could not be reviewed under R.C. 2953.08(D).

{¶ 31} *Patrick* requires courts to engage in semantics, creating constitutional claims for the purposes of reviewing sentences that are otherwise unreviewable under R.C. 2953.08. Until the Ohio Supreme Court provides further clarity, appellate courts are required to engage in this linguistic parsing.

{¶ 32} Accordingly, I concur with the majority's analysis and conclusion. Because Bennett phrased his argument in terms of a constitutional right, R.C. 2953.08 does not apply and his sentence is reviewable. Absent framing the argument in terms of a constitutional right, *Holman* would control and the sentence would be unreviewable.

KEYWORDS: