[Cite as *State v. St. Valle*, 2024-Ohio-1167.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 113191 |
| VEGIL ST. VALLE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 28, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-678108-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van and Lindsay Patton, Assistant Prosecuting Attorneys, *for appellee.*

Robey & Robey and Gregory Scott Robey, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Otis Edward Williams, indicted in this matter under an alias, Vegil St. Valle, appeals the ten-year prison sentence and a $10,000 fine imposed by the trial court after he pleaded guilty to drug trafficking and possession of criminal tools. For the reasons that follow, we affirm.

## I. Factual Background and Procedural History

{¶ 2} Williams reported that he is a citizen of Jamaica who is present in the United States without legal immigration status.

{¶ 3} On March 1, 2023, a Cuyahoga County Grand Jury indicted Williams — under his St. Valle alias[1] — on charges of drug trafficking, drug possession and possession of criminal tools. The drug charges carried major drug offender specifications and all the charges carried forfeiture specifications targeting cell phones and $414 in cash.

{¶ 4} On August 23, 2023, the state amended the indictment pursuant to a plea agreement and Williams pleaded guilty to trafficking in violation of R.C. 2925.03(A)(2) (a first-degree felony) and possessing criminal tools in violation of R.C. 2923.24(A) (a fifth-degree felony). Both counts carried forfeiture specifications. The state dismissed the remaining count and the major drug offender specifications through a nolle prosequi. The state and Williams agreed to

---

[1] At the change-of-plea hearing, the parties stipulated to an amendment to the indictment changing the defendant's name to "Vegil St. Valle, a.k.a. Otis Edward Williams." The defense sentencing memorandum also spells the defendant's name as "Otis Edward Williams." Therefore, we refer to the defendant by that name throughout this opinion.

We note, however, that the presentence-investigation report alternatively identifies his true name as "Otis Edward Williams" and "Otis Williams Edwards." When Williams was arrested, he was carrying a Georgia driver's license under the name "Vegil St. Valle"; this is also the name under which he is incarcerated. We further note that many of the letters in mitigation identify the defendant as "Otis Edwards." And the presentence-investigation report identifies that Williams has used other aliases — including Mario Brown, Ian Obryant, Eric Smith and William Johnson as well as many alias social security numbers and birth dates.

recommend a sentencing range of five to eleven years in prison. The trial court

engaged in the following colloquy with respect to that portion of the agreement:

> THE COURT: The government has further indicated to this Court that you entered into an agreement whereby you agree to be sentenced between five and eleven years in prison. Did you enter into that agreement?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand it?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you have any questions with reference to it?
>
> THE DEFENDANT: No, Your Honor.

{¶ 5} The trial court accepted Williams' guilty pleas, ordered a presentence

investigation and set the matter for sentencing.

{¶ 6} On August 23, 2023, Williams filed a motion to waive fines and costs,

attaching a document styled as an affidavit of indigence.

{¶ 7} On September 12, 2023, the trial court held a sentencing hearing. In

advance of sentencing, Williams filed a sentencing memorandum and numerous

letters in mitigation. He advocated for an aggregate sentence of five years in prison,

noting, among other things, that he was genuinely remorseful for his conduct, had

led a law-abiding life for ten years prior to these offenses and was simultaneously

facing federal prosecution for illegal reentry into the United States and probable

deportation. The defense described his conduct as follows:

> [T]he Defendant was given the opportunity to make $400, if he would pick up and deliver a parcel. Defendant went to the home and paid the homeowner $200, for receiving the package. Defendant then loaded

the package in his car and was stopped by police as he was driving to deliver the package [which contained around a kilogram of a substance containing cocaine].

{¶ 8} Williams addressed the court at the sentencing hearing, as did defense counsel. The court noted that Williams had prior drug convictions in 1998 and 1999 and also had a federal conviction for illegal reentry into the United States. Defense counsel noted that Williams had been living in Cleveland Heights, had a "stable home" and "stable relationship" and had "grown children, all who [sic] are solid citizens."

{¶ 9} After confirming with defense counsel that "[y]ou entered into an agreement with the State of Ohio for a sentence between five and 11 years," the trial court announced its sentence. It sentenced Williams to ten years in prison and a $10,000 fine on the trafficking count. It sentenced him to 11 months in prison and a $250 fine on the possessing-criminal-tools count.[2] The court ran the prison sentences concurrently and awarded 231 days of jail-time credit.

{¶ 10} The court thereafter reduced its sentence to a journal entry, which read as follows, in relevant part:

> The court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11.
>
> The court imposes a prison sentence at the Lorain Correctional Institution of 10 year(s).

---

[2] The trial court referred to these fines as "costs" in announcing its sentence at the hearing but in context it was clear that the court meant the money penalties as fines. The court identified these money penalties as fines in its sentencing entry and no party raises an error in this appeal from the court's misstatement at the hearing.

Count 1:  F1, 10 year(s) * * *

Count 3:  F5, 11 month(s) * * *

* * *

The defendant is ordered to pay a fine in the sum of $10,250.00. (Count 1 — $10,000.00 fine; Count 3 — $250.00 fine)

The court hereby enters judgment against the Defendant in an amount equal to the costs of this prosecution.

{¶ 11} Williams appealed, raising the following assignments of error for review:

First Assignment of Error:  The trial court erred when it imposed a 10-year prison term that is not supported by the record.

Second Assignment of Error:  The trial court abused its discretion when it imposed a $10,000 fine, despite Appellant filing a timely motion to waive fines and costs, with a supporting affidavit of indigency.

## II.  Law and Analysis

### A. First Assignment of Error

{¶ 12} Williams asks us to vacate his sentences.  Presumably, he would have us remand the matter for resentencing.  He first contends that the sentences are contrary to law because the trial court erroneously believed he had five previous felony drug convictions when, in fact, he only had two.  This argument is meritless. Williams' counsel corrected the trial court's misunderstanding at the sentencing hearing and the court acknowledged the correction before announcing its sentence.

{¶ 13} Williams' remaining arguments concern the trial court's weighing of the statutory sentencing factors in R.C. 2929.12(B), (C), (D) and (E).  He contends that the court failed to properly consider the mitigating factors enumerated at

R.C. 2929.12(C)(3), (C)(4), (E)(1), (E)(4) and (E)(5) and, further, failed to consider that Williams is facing federal illegal reentry charges and deportation. And, he says, the court put too much emphasis on certain aggravating factors. Finally, he argues that the trial court gave undue weight to his lack of immigration status and failed to fairly consider a character letter written on his behalf.

{¶ 14} At the heart of all these arguments is a contention that the circumstances of his case do not support a ten-year prison sentence.

{¶ 15} Williams asks us to review his felony sentences under the standard set forth in R.C. 2953.08(G)(2). Under that statute, an appellate court may increase, reduce or otherwise modify a sentence or vacate a sentence and remand for resentencing if it "clearly and convincingly" finds that (1) the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4) or 2929.20(I) or (2) the sentence is "otherwise contrary to law." *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 21.

{¶ 16} This case, however, involves a jointly recommended sentence. Our review of Williams' sentence is therefore limited by R.C. 2953.08(D)(1). Under that statute, a sentence imposed upon a defendant is not subject to appellate review "if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." R.C. 2953.08(D)(1); *see also State v. Noling*, 136 Ohio St.3d 163, 2013-Ohio-1764, 992 N.E.2d 1095, ¶ 22 (R.C. 2953.08(D)(1) is "a statutory limit on a court of appeals'

jurisdiction to hear an appeal."). This limitation on a defendant's ability to challenge a jointly recommended sentence on appeal applies to sentences imposed as a result of plea agreements involving an agreed specific term, plea agreements involving a jointly recommended sentencing range and plea agreements involving pleas to multiple offenses with a jointly recommended aggregate sentencing range. *State v. Williams*, 8th Dist. Cuyahoga No. 108724, 2020-Ohio-3802, ¶ 8–10; *State v. Patterson*, 8th Dist. Cuyahoga No. 106655, 2018-Ohio-4114, ¶ 10; *State v. Grant*, 2018-Ohio-1759, 111 N.E.3d 791, ¶ 11–20, 23 (8th Dist.). "That appellant agreed to a sentencing range or sentencing cap, as opposed to a specific sentence, is immaterial." *Grant* at ¶ 23.[3]

{¶ 17} As this court explained in *Grant*:

Range agreements are no different than specific term agreements; they are both negotiated agreements based on a quid pro quo arrangement where each side gives up something in exchange for being bound by the terms of the agreement. Under either scenario, the defendant can "cap" or limit his exposure. When an agreed range is involved, the state is ensured the sentence will fall within the agreed range and the defendant is ensured the sentence will not exceed it. We cannot permit a defendant to agree to a term of imprisonment, whether expressed specifically or within a range, in exchange for lesser charges or having some charges dismissed, only to turn around and challenge that very agreement on appeal. Such practice would only serve to undermine the state's incentive to enter plea agreements in the first place.

---

[3] We are aware of at least one case in which a majority of a panel of this court considered a defendant's appellate arguments regarding the trial court's weighing of statutory sentencing factors, even after an agreed sentence. *See State v. Townsend*, 8th Dist. Cuyahoga No. 107458, 2019-Ohio-1442, ¶ 4, 7, fn.1, 10–25. However, the majority noted that its decision to consider the argument was based in part on the state's failure to argue that it could not. *Id.* Here, the state specifically argued that the agreed sentence limits our ability to consider Williams' appellate arguments.

* * *

> Where a defendant agrees to a sentencing range, he implicitly agrees to all definite sentencing possibilities within that range * * *. "If [the defendant] believed a sentence at the top end of that range was improper, [he] should not have accepted a plea deal that authorized it." *[State v.] Connors*, 2d Dist. Montgomery No. 26721, 2016-Ohio-3195, at ¶ 4.

*Grant* at ¶ 18, 31; *cf. State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 25 ("The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate. Once a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence.").

{¶ 18} A sentence is "authorized by law" within the meaning of R.C. 2953.08(D)(1) "'if it comports with all mandatory sentencing provisions.'" (Emphasis deleted.) *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 26, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, paragraph two of the syllabus; *see also State v. Adkins*, 8th Dist. Cuyahoga Nos. 109184 and 109185, 2021-Ohio-1294, ¶ 11.

{¶ 19} In this case, Williams and the state jointly recommended a sentencing range of an aggregate five to eleven years in prison. Williams thus agreed that any sentence within that range would be appropriate. The ten-year prison sentence the trial court imposed was within that jointly recommended range. While Williams disagrees with the trial court's weighing of certain statutory sentencing factors, he makes no argument that his sentence fell outside of the statutory range for these offenses or failed to comport with any mandatory sentencing provision. *Compare,*

*e.g., State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 26–27 (considering a trial court's failure to merge allied offenses of similar import, a mandatory duty, in the context of an agreed sentence). Further, Williams does not challenge his sentence on constitutional grounds. *See State v. Bennett*, 8th Dist. Cuyahoga No. 112182, 2023-Ohio-4412, ¶ 27–30 (Sean C. Gallagher, J., concurring) (stating the opinion that "[w]hen an appeal of a sentence is presented as a constitutional claim, * * * that appeal of the sentence does not arise under R.C. 2953.08(A), and therefore, the appellate court has authority to review the sentence despite the preclusionary language under [R.C. 2953.08(D)(1)]," an issue that is not before us in this appeal.). Finally, we note that Williams is not challenging the validity of his plea agreement and has not sought to withdraw his plea. He challenges only the resulting sentences imposed after he pleaded guilty.

{¶ 20} Because the sentences imposed by the trial court were within the jointly recommended sentencing range and were authorized by law, Williams' sentences are not reviewable by operation of R.C. 2953.08(D)(1).

{¶ 21} We, therefore, overrule Williams' first assignment of error.

### B. Second Assignment of Error

{¶ 22} Williams contends that the trial court erred by imposing a $10,000 fine on the trafficking count when he had filed a motion to waive fines and costs and an affidavit of indigency prior to the sentencing hearing.

{¶ 23} Because Williams did not object to the imposition of the fine at the sentencing hearing, we review this argument only for plain error. *See, e.g.*, *State v. Brantley*, 8th Dist. Cuyahoga No. 94508, 2010-Ohio-5760, ¶ 12.

{¶ 24} Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An appellate court notices plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error "must be an 'obvious' defect in the trial proceedings" and we will not find plain error unless, but for the error, the outcome would have been different. *Barnes* at 27; *Long* at paragraph two of the syllabus; *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 78. "The burden of demonstrating plain error is on the party asserting it." *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 25} William pleaded guilty to drug trafficking in violation of R.C. 2925.03(A)(2), a first-degree felony. R.C. 2925.03(D)(1) states, in relevant part:

> If the violation of division (A) of this section is a felony of the first * * * degree, the court shall impose upon the offender the mandatory fine specified for the offense under [R.C. 2929.18(B)(1)] unless, as specified in that division, the court determines that the offender is indigent.

{¶ 26} R.C. 2929.18(B)(1), in turn, requires a trial court to impose a fine of at least $10,000, and up to $20,000, for a first-degree drug trafficking offense. R.C. 2929.18(A)(3)(a), (B)(1). The statute goes on to state the following:

> If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

{¶ 27} The state contends that Williams failed to comply with this statute because the document attached to his motion to waive the fine was not a properly executed affidavit. The state notes that the document does not appear to bear a notary seal or stamp. Therefore, the state says, "[I]t is unclear who has notarized this document and whether the person carries a valid commission."

{¶ 28} An affidavit is "a written declaration under oath, made without notice to the adverse party." R.C. 2319.02. The document attached to Williams' motion indicates that the statements therein were declared under oath. That said, it is true that the person serving as notary to this document — their signature appears visually similar to the signature of Williams' counsel on the motion itself — failed to provide a completed notarial certificate as required by R.C. 147.542. Williams' affidavit does not include, for example, "[t]he notary's printed name, displayed below the notary's signature or inked stamp" or "[t]he notary's notarial seal and commission expiration date." R.C. 147.542(F). We also note that the document was executed by the defendant using an alias, Vegil St. Valle, and not under his apparent

true name. On the other hand, the state did not object to the trial court's consideration of the affidavit and the trial court did not strike the document.

{¶ 29} We need not dwell on these facts or consider whether this document is defective for purposes of R.C. 2929.18(B)(1), because we would affirm the trial court's judgment even if the document were a properly executed affidavit of indigency.

{¶ 30} "[A]n offender who files an affidavit alleging that he or she is indigent and is unable to pay a mandatory fine is not automatically entitled to a waiver of that fine." (Emphasis deleted.) *State v. Gipson*, 80 Ohio St.3d 626, 634, 687 N.E.2d 750 (1998). The sentencing court must find that the offender is an indigent person and is unable to pay the mandatory fine in order to waive the fine. *State v. Cotto*, 8th Dist. Cuyahoga No. 107159, 2019-Ohio-985, ¶ 11.

{¶ 31} Before imposing a fine under R.C. 2929.18, a trial court is required to "consider the offender's present and future ability to pay the amount of the sanction or fine," R.C. 2929.19(B)(5), but "'there are no express factors that must be taken into consideration or findings regarding the offender's ability to pay that must be made on the record.'" *Cotto* at ¶ 11, quoting *State v. Hampton*, 8th Dist. Cuyahoga No. 103992, 2016-Ohio-5419, ¶ 7. Generally, a trial court satisfies this requirement when it considers a presentence-investigation report that contains information about the defendant's financial situation and his ability to pay the fine. *See, e.g.*, *State v. Clemons*, 8th Dist. Cuyahoga No. 101230, 2015-Ohio-520, ¶ 10; *State v. Simpson*, 8th Dist. Cuyahoga No. 101088, 2014-Ohio-4580, ¶ 21. Ultimately, to

avoid the imposition of a mandatory fine, the burden is on the defendant "to affirmatively demonstrate that he or she is indigent and is unable to pay the mandatory fine." (Emphasis deleted.) *Gipson* at 635; *Cotto* at ¶ 13.

{¶ 32} Here, the trial court considered a presentence-investigation report that contained information about Williams' financial situation and his ability to pay the fine. Among other things, it indicated that Williams had been employed doing "drywall and flooring." Defense counsel also noted, at the sentencing hearing, that Williams had stable housing, a stable romantic relationship and adult children. Furthermore, we note that Williams retained counsel throughout the trial court proceedings and before this court. *See State v. Reese*, 8th Dist. Cuyahoga No. 107564, 2019-Ohio-1779, ¶ 7. Finally, when he was arrested he was in possession of multiple cell phones and over $400 in cash.

{¶ 33} While we acknowledge that Williams is not a U.S. citizen and will be facing potential deportation after his release from prison, we cannot say, based on the record before us, that the trial court failed to consider Williams' present and future ability to pay the fine or that it was unreasonable for the trial court to conclude that Williams would be able to pay the fine. Accordingly, we do not find plain error in the trial court's imposition of the fine.

{¶ 34} We, therefore, overrule Williams' second assignment of error.

III. Conclusion

{¶ 35} Having overruled Williams' assignments of error for the reasons stated above, we affirm.

The court finds there were reasonable grounds for this appeal.

It is ordered that the appellee recover from the appellant the costs herein taxed.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR